**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **NANCY JEAN PARKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 5:12cv081** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DISCOUNT BOX AND PALLET, INC.,** | ) | **By: Hon. Michael F. Urbanski** |
| **AND** | ) | **United States District Judge** |
| **NESTA HILTON SMITH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Before the court is defendant Discount Box and Pallet, Inc.'s ("Discount Box") motion to set aside its default (Dkt. # 27), which was entered by the Clerk of Court ("Clerk") on October 17, 2012, and a renewed motion for an extension of time to file a responsive pleading. (Dkt. # 18.) Plaintiff has moved for entry of default judgment as to defendant Discount Box, (Dkt. # 9), and moved to dismiss defendant Nesta Hilton Smith ("Smith") from this matter. (Dkt. # 22.) Given the reasoning below, plaintiff's motion for entry of default judgment, (Dkt. # 9), is **DENIED**, and defendant's motions to set aside the default, (Dkt. # 27), and for an extension of time to file a responsive pleading, (Dkt. #18), are **GRANTED**. Plaintiff's motion to voluntarily dismiss defendant Smith, (Dkt. # 22), is **DENIED** as moot.

### I.

Plaintiff filed this action on July 31, 2012. The complaint alleges that on August 28, 2010, plaintiff was in a car accident as a result of defendant Smith's failure to keep proper lookout, failure to operate her tractor trailer at a safe speed, failure to obey traffic signals, and

failure to maintain control over her tractor trailer.  Plaintiff contends that defendant Smith's

employer, Discount Box, is vicariously liable for Smith's negligence.[1]  Specifically, the

complaint alleges that plaintiff was driving south on Interstate 81 when she noticed that the car in

front of her had stopped due to debris in the road.  When plaintiff saw defendant Smith's tractor

trailer behind her, she realized that defendant Smith would not be able to stop.  She also realized

that she could not move into the right-hand lane due to traffic.  Therefore, plaintiff swerved into

the median to avoid being hit by defendant Smith's tractor trailer.  Plaintiff alleges that defendant

Smith also swerved into the median instead of attempting to stop, negligently and carelessly

crashing into the passenger side of plaintiff's vehicle.  Due to the accident, plaintiff suffered

lower back, neck, and shoulder injuries.

Plaintiff states that she served defendant Discount Box through the Secretary of the

Commonwealth of Virginia.[2]  Process was served on the Secretary on September 10, 2012.  The

Secretary mailed the process to the registered agent for the corporation as designated with the

North Carolina Department of the Secretary of State by certified mail, return receipt requested,

on September 17, 2012.  The Affidavit of Compliance executed by the Secretary was filed with

the Clerk on September 21, 2012.  (Dkt. # 5.)  Pursuant to Rule 12 of the Federal Rules of Civil

Procedure, a responsive pleading was due by October 12, 2012.  On October 17, 2012, five days

after defendant Discount Box's answer was due, plaintiff filed a Motion for Clerk's Entry of

Default.  (Dkt. # 6.)  The Clerk entered a notice of default pursuant to Rule 55(a) on the same

day.  On October 24, 2012, plaintiff filed a motion for default judgment and requested that the

---

[1] Plaintiff alleges that defendant Smith was acting within the scope of her employment at the time of the accident.
[2] To serve a foreign corporation, Va. Code § 8.01-301 provides that the corporation may be served by personal service on an officer or director or the registered agent found within the Commonwealth, or by substituted service pursuant to § 8.01-329 as authorized under § 8.01-328.1, Virginia's long-arm statute.  Va. Code § 8.01-329 designates the Secretary of the Commonwealth as the statutory agent for service of process. The Secretary of the Commonwealth's responsibility is to mail, by certified mail, return receipt requested, the necessary documents. Service of process is effective on the date that the affidavit or certificate of compliance is filed with the court.

court conduct an evidentiary hearing on the question of damages pursuant to Federal Rule of Civil Procedure 55(b)(2)(B).[3]

Plaintiff effected service upon defendant Smith after the time for defendant Discount Box to respond to plaintiff's complaint had expired.  Service was effected, pursuant to Virginia Code §§ 8.01-308 & 310, upon defendant Smith through the Commissioner of the Department of Motor Vehicles as the agent for a nonresident motor vehicle operator.[4]  The Affidavit of Compliance was filed with the Clerk on October 29, 2012.[5]  (Dkt. # 11.)

The court held the evidentiary hearing on November 6, 2012.  One hour before the hearing was to commence and twenty-five days after the answer to the complaint was due, Discount Box entered its first appearance in this matter, filing a motion to dismiss the complaint for insufficiency of service of process.  (Dkt. # 12.)  On the same day, defendant Smith timely answered the complaint, asserting the affirmative defenses of sudden emergency, contributory negligence, assumption of risk, and unavoidable accident.  (Dkt. # 13.)  At the evidentiary hearing, plaintiff and her husband, a passenger in the car at the time of the accident, testified regarding her injuries.[6]

The court also heard argument on November 6, 2012 on defendant Discount Box's motion to dismiss for insufficiency of service of process.  Defendant Discount Box argued that

---

[3] In support of her motion, plaintiff also filed various medical records.

[4] VA Code §§ 8.01-308 & 310 designates the Commissioner as the statutory agent of nonresident motor vehicle operators for purposes of service of process in any action against him growing out of any accident or collision occurring in the Commonwealth.

[5] Plaintiff delivered process to the Commissioner on October, 15, 2012.  The Commissioner forwarded process on October 26, 2012 to defendant Smith at her last known post office address.

[6] Specifically, plaintiff testified that she had suffered injuries to her neck, low back, and shoulder as a result of the accident.  While the pain from her injuries to her neck and low back has subsided, the injury to her shoulder continues to be painful and limits her activities.  Plaintiff introduced into evidence the affidavits of both Dr. Lorio and Dr. Marine suggesting that plaintiff needed surgery to repair her shoulder injury.  Plaintiff testified that she had incurred $12,078.69 in medical expenses to date.  An affidavit, introduced at trial from a life care planner, indicated that the shoulder surgery would cost between $83,000 and $93,000.  At the conclusion of the hearing, plaintiff asked the court to enter default judgment in her favor in the amount of $250,000, plus prejudgment interest from August 29, 2010, the date of the accident.

Virginia. Code § 8.01-329(C) requires that the Secretary of the Commonwealth, when effecting service, forward a copy of the process or notice and a copy of the Affidavit of Compliance.  In its brief and at oral argument, defendant Discount Box contended that neither the plaintiff's affidavit, filed on October 17, 2012 in support of the motion for Clerk's entry of default, nor the Affidavit of Compliance, executed by the Secretary of the Commonwealth and filed on September 21, 2012, stated that <u>both</u> process and the Affidavit of Compliance was sent to the registered agent.  Therefore, defendant Discount Box argued that the complaint should be dismissed for insufficient service of process in that the form used by the Secretary did not strictly meet the requirements of the Virginia Code § 8.01-329(C).  At argument, the court registered its skepticism as to Discount Box's position and required it to file an affidavit as to whether, in fact, Discount Box's registered agent received the Affidavit of Compliance.  On November 12, 2012, Discount Box filed an affidavit from the registered agent which attached the contents of the mailing from the Secretary of the Commonwealth.  (Dkt. # 17.)  On the same day, Discount Box filed a motion to withdraw the motion to dismiss and renewed its motion for an extension of time to file a responsive pleading.  (Dkt. # 18.)  Upon inspection of the affidavit, it is clear that both process and the affidavit were sent to the registered agent.  Therefore, the court finds it appropriate to grant defendant's motion to withdraw its meritless motion to dismiss.[7]

Finally, at the evidentiary hearing, counsel for plaintiff noted the difficulties it had with defendant's insurer, Zurich Insurance Company ("Zurich") leading up to the filing of this case. Counsel detailed that the Zurich adjuster responsible for his client's claim had failed to respond to his emails and phone calls on multiple occasions.  Counsel indicated that he attempted to negotiate and settle this matter for months before he was forced to file suit to avoid the running

---

[7] By separate Order, Discount Box's motion to withdraw its motion to dismiss, (Dkt. # 18), will be **GRANTED** and its motion to dismiss, (Dkt. # 12), will be **DENIED** as moot.

of the statute of limitations.  After the hearing, counsel for plaintiff filed an affidavit in which he detailed the lengths to which he went to engage with an utterly unresponsive insurance adjuster at Zurich.  (Dkt. # 16.)

As set forth in counsel's affidavit, on May 3, 2012, he mailed a demand package to the adjuster responsible for the handling of his client's claim.  On May 15, 2012, counsel for plaintiff followed up with the adjuster via email to ensure receipt of the package, but received no response from the adjuster.  On May 22, 2012, counsel for plaintiff again emailed the adjuster for an acknowledgement of receipt of the demand package.  The Zurich adjuster finally acknowledged receipt of the package on May 23, 2012, but indicated that she had yet to review its contents.  On June 3, 2012, counsel for plaintiff again emailed the adjuster asking if she had reviewed the settlement package.  In that email, counsel for plaintiff noted that the statute of limitations would run in August and asked the adjuster whether or not she was interested in entering into negotiations.  Counsel for plaintiff received no response to his June 3, 2012 email. On June 15, 2012, counsel for plaintiff called the adjuster and spoke to her on the telephone. The adjuster indicated that she had received the package, but not yet evaluated it.  She promised to do so.  On June 21, 2012, counsel for plaintiff emailed the adjuster again, this time pointing out that seven weeks had elapsed since the settlement package was sent to her.  Counsel for plaintiff again reminded the adjuster that the statute of limitations would run in August, and advised her that if a response was not received to the settlement demand by the end of June, he would file suit.

On July 2, 2012, counsel for plaintiff called the adjuster again but obtained her voicemail, which indicated that she was out of the office and referred the caller to her supervisor.  Counsel for plaintiff then called the adjuster's supervisor and explained that he had sent a settlement

demand on May 3, 2012 and that he had yet to receive a response.  The adjuster's supervisor
confirmed that the settlement package had been received, but had not been reviewed.  Counsel
for plaintiff then asked the supervisor to enter into negotiations on the claim, but the supervisor
indicated he would probably be unable to do so prior to the adjuster's return to the office.  The
adjuster's supervisor did not follow up with counsel for plaintiff on this matter.

On July 13, 2012, counsel for plaintiff emailed the adjuster again, asking if she had any
interest in negotiating the claim, but did not receive a response.  On July 20, 2012, counsel for
plaintiff again contacted the adjuster and her supervisor each by phone and left a voicemail
requesting return phone calls.  Neither the adjuster nor her supervisor returned his call.  On July
23, 2012, counsel for plaintiff sent an email to both the adjuster and the adjuster's supervisor to
which he attached a copy of the complaint, subsequently filed in this action.  In the email,
counsel for plaintiff also requested that the claim be mediated and advised that he would file suit
the next week if he did not hear from them.  On July 30, 2012, counsel for plaintiff, in a last
ditch effort to negotiate directly with the insurer, sent an email asking whether or not he should
hold off filing the suit in order to allow negotiations.  Counsel for plaintiff indicates that he did
not receive a response.

On September 17, 2012, counsel for plaintiff emailed the adjuster, advising her that the
suit papers were in the hands of the process server and that service would be effected "any day."
Counsel for plaintiff again asked the adjuster if she was interested in talking, but did not receive
a response.  On October 17, 2012, the date on which plaintiff filed a motion for entry of default
by the Clerk, counsel for plaintiff received a fax from the adjuster with a settlement offer.  This
was the first communication from anyone at Zurich since July 2, 2012 when counsel for plaintiff

spoke to the adjuster's supervisor.  Since receipt of the fax, there have been no telephone communications between counsel for plaintiff and anyone at Zurich or Discount Box.

 After the evidentiary hearing, on November 16, 2012, plaintiff moved to dismiss defendant Smith pursuant to Federal Rule of Civil Procedure 41(a)(2), reasoning that defendant Smith should be dismissed so that there "is no risk of an inconsistent verdict in favor of Smith" if the court enters default judgment against defendant Discount Box.  (Dkt. # 25.)  Defendant Discount Box filed its motion to set aside default on November 29, 2012.  (Dkt. # 27.)

## II.

### A.  STANDARD OF REVIEW

 Federal Rule of Civil Procedure 55(c) states that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)."  Because a default has been entered against Discount Box, but a default judgment has not been issued, the motion to set aside default is correctly made pursuant to Rule 55(c) rather than Rule 60(b).

 "The disposition of motions made under Rule 55(c) ... is a matter which lies largely within the discretion of the trial judge."  Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp., 383 F.2d 249, 251 (4th Cir. 1967).  In considering whether "good cause" exists to set aside default judgment under Rule 55(c), a court should consider "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic."  Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 204–05 (4th Cir.  2006).  The statute must be "liberally construed in order to provide relief from the onerous consequences of defaults and default judgments."  Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987).  Indeed, a panel of the Fourth Circuit, in an unpublished

decision, has noted that "the extreme sanction of judgment by default is reserved for only cases where the party's noncompliance represents bad faith or a complete disregard for the mandates of procedure and the authority of the trial court." Mobil Oil Co. de Venez. v. Parada Jimenez, 989 F.2d 494, 1993 WL 61863, at *3 (4th Cir. 1993) (unpublished table decision).  Finally, the Fourth Circuit has also "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010).

## B.  ANALYSIS

### 1.  Merits of Defendant's Defense

The court "has discretion to determine whether a proffered defense or counterclaim is meritorious." Bank of Southside Va. v. Host & Cook, L.L.C., 239 F.R.D. 441, 445 (E.D.Va. 2007).  In order for a defense to be meritorious, the proffer of evidence must only be one "which would permit a finding for the defaulting party or which would establish a valid counterclaim." Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir.1988) (citations omitted).  Indeed, the meritorious defense factor of Rule 55(c)'s "good cause" analysis is fundamental to the determination because the absence of meritorious defenses makes relief from default pointless.  Indigo Am., Inc. v. Big Impressions, L.L.C., 597 F.3d 1, 4 (1st Cir. 2010) ("Where no meritorious defense exists, it makes little sense to set aside the entry of default, as doing so would merely delay the inevitable.").  Therefore, the court will consider the defenses asserted by defendant Discount Box.

In its motion to set aside default, defendant Discount Box states that "the testimony of plaintiff [at the evidentiary hearing] establishes that plaintiff was travelling too fast for the conditions then present, failed to keep proper lookout, was following too closely, and/or failed to

8

keep her vehicle under control." (Dkt. # 27.) For the purposes of the court's analysis, the alleged defenses need not be proven to be deemed "meritorious." Wainwright's Vacations, LLC v. Pan Am. Airways, Corp., 130 F.Supp.2d 712, 718 (D.Md. 2001) ("[T]he moving party does not have to prove conclusively that he would prevail, only that there is sufficient evidence to permit a court to find in his favor."). "[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982).

Nevertheless, defendant must present the court with "a satisfactory explanation of the merits of the defense." Consol. Masonry., 383 F.2d at 252 ("The defendant did no more than state that plaintiff breached the contract, a mere conclusion which fell far short of providing the court with a satisfactory explanation of the merits of the defense."). Discount Box offers no facts in its motion to set aside default to support the existence of meritorious defenses. Rather, citing "the testimony of plaintiff," it offers only a rote listing of standard defenses in automobile cases. As defendant provides no explanation for its list of boilerplate defenses, the court has no ability to discern whether they are meritorious or not. While the Fourth Circuit certainly has an unmistakable policy of resolving cases on the merits whenever possible and justified, it has also held that a defendant may be required to disclose facts to support bare allegations of a meritorious defense. Id. Accordingly, the court finds that defendant's insufficient assertion of a meritorious defense militates against setting aside the entry of default. [8]

---

[8] In addition to making this conclusory recitation of plaintiff's actions that may give rise to certain defenses, defendant also states, citing Rakes v. Fulcher, 210 Va. 542, 549 (1970), that since liability of Discount Box is "predicated upon a master-servant relationship with a co-defendant whose negligence is alleged to have been the proximate cause of the injuries sustained by the plaintiff, a verdict in favor of the servant requires a verdict for the master also." (Dkt. # 27.) Although the defendant truck driver, codefendant Smith, "reserved its right" to assert

### 2.  Reasonable Promptness

Next, the court must determine whether defendant Discount Box was reasonably prompt in responding to the entry of default.  Reasonable promptness is determined at the discretion of the trial court and is evaluated "in light of the facts and circumstances of each occasion." Moradi, 673 F.2d at 727.  District courts in the Fourth Circuit have found that a defendant acted reasonably promptly when waiting seventeen, twenty-one, and thirty-two days after default was entered before attempting to set it aside.  See United States v. $10,000.000 in United States Currency, 2002 WL 1009734, *3 (M.D. N.C. Jan. 29, 2002); Esteppe v. Patapsco & Back Rivers R.R. Co., 2001 WL 604186, *4 (D.Md. May 31, 2001); Wainwright's Vacations, 130 F.Supp.2d at 718.

The timing of defendant's response in this case falls within the range deemed reasonably prompt in those decisions.  The Clerk of the Court entered default on October 17, 2012. Discount Box's motion to dismiss was filed at 12:57 p.m. on November 6, 2012, just one hour before the scheduled hearing on the default motion.  Counsel for defendant appeared at the November 6, 2012 hearing.  As such, defendant's responsive pleading was twenty-five days late. Defendant also filed a motion to set aside default on November 29, 2012.  Courts have allowed cases to be heard on their merits when the defaulted party delayed its appearance for periods far longer than experienced here.  See, e.g., Lolatchy, 816 F.2d at 952–54 (allowing case to be heard on merits although moving party delayed ten months before filing its motion to set aside default); Vick v. Wong, 263 F.R.D. 325 (E.D. Va. 2009) (finding reasonable promptness factor weighed in favor of set aside where moving party did nothing for more than two months after default was entered, but responded to the motion for entry of default judgment within a few weeks);

---

affirmative defenses of sudden emergency, contributory negligence, assumption of risk, and unavoidable accident, no facts are alleged to suggest that any of these defenses are meritorious.

Wainwright's Vacations, 130 F.Supp.2d 712 (concluding that moving to vacate default a little

more than one month after entry of default was acting with reasonable promptness).  Therefore,

the relatively short period of delay weighs in favor of setting aside the entry of default.

   **3.  Personal Responsibility and History of Dilatory Action.**

   The court also must consider whether defendant is ultimately the responsible party in

failing to respond to plaintiff's complaint in a timely manner.  See Colleton Prep., 616 F.3d at

418.  Plaintiff places the blame for the default on Zurich, the insurer for Discount Box.

   When evaluating the personal responsibility of the defaulting party and history of dilatory

action factors, courts have demonstrated some reluctance in penalizing a party for delay

attributable solely to the errors of a party's representative, such as counsel.  Moradi, 673 F.2d at

728; Lolatchy, 816 F.2d at 953.  While a number of courts have declined to penalize a party for

lapses of its counsel, an insurance company, with a stake in the outcome, lies in a slightly

different posture.  See  Flora v. JPS Elastomerics, No. 4:08cv31, 2009 WL 1956495, at *5

(W.D.Va. July 7, 2009) (Kiser, J.) ("The insurance company's position is markedly different

from that of an attorney.  Argonaut [the insurer] was a real party in interest, although not a

named defendant.  National Single-Ply [the defendant] had ceded to Argonaut the handling of the

defense and all decisions to be made in that regard.")

   In Flora, an employee of defendant roofing contractor was repairing a roof at a Lowe's

Home Center and negligently allowed a metal bar to fall and hit the plaintiff, a Lowe's customer.

After the lawsuit against the defendant was filed, the registered agent of the defendant promptly

forwarded the complaint and summons to the defendant's insurance agent, who then relayed the

information to the insurance carrier and later called the carrier to inquire into the status of

counsel.  Id. at *2.  The insurer took no action in this matter and did not retain counsel until the

11

day on which default was entered by the clerk.  Id.  Counsel for plaintiff asserted that the defendant should be held "vicariously liable" for the inaction of the insurer.  Id. at *5.  The court declined to rule directly on that issue, and instead noted that while the "failure of the insurance company and insurance carrier in this matter to capture and record incoming legal papers is clear from the record," the defendant "bears some responsibility for default."  Id.  Specifically, the court noted that defendant had been served with the complaint on two occasions and failed to enter appearance until twenty-two days after the plaintiff filed a motion for default judgment.  Despite finding that defendant's insurer had dropped the ball and that defendant itself bore some personal responsibility for the default, the court nevertheless held that the interests of justice were best served by trying the case on the merits.

The Fourth Circuit's opinion in Colleton Prep. also bears on this issue.  In Colleton Prep., the registered agent for defendant failed to forward the suit papers or in any way notify defendant of the existence of the lawsuit.  The district court held that the agent's mishandling of process should be charged to the defendant.  While the district court acknowledged the policy in favor of merits-based adjudication and forthrightly applied the Payne factors, it nevertheless refused to vacate entry of default, relying heavily on the "personal responsibility" factor.  On appeal, the Fourth Circuit reversed, concluding that the district court abused its discretion by refusing to vacate the default "in the face of our time-worn commitment to the resolution of disputes on their merits, and in light of overwhelming evidence supporting "good cause" to vacate the entry of default under Fed. R. Civ. P. 55(c)."  Id. at 420.

To be sure, "sloppy handling of papers by which legal actions are commenced is inexcusable."  Park Corp. v. Lexington Ins. Co., 812 F. 2d 894, 898 (4th Cir. 1987) (Haynesworth, J., concurring).  This admonition is particularly apt in this case.  Zurich's abject

12

indifference to the many inquiries made by plaintiff's counsel is both inexcusable and discourteous.  At the November 6, 2012 hearing or subsequently, defendant has provided no explanation for Zurich's failure to address this claim.  Moreover, the court shares the view expressed in Flora that a named defendant is not relieved of its responsibility or obligation to timely respond to a lawsuit simply because it has turned the matter over to its insurer.  Defendant's registered agent was served in this matter on September 21, 2012 through the Secretary of the Commonwealth, and, therefore, defendant itself bears some responsibility for default in this case, independent of the actions of its insurance carrier.  As a result, this factor weighs against setting aside the default in this case.

The court must also consider if there is a history of dilatory action by the party in default.  The affidavit of counsel for plaintiff indicates that Zurich, defendant's insurer, failed to handle her claim in a prompt and professional manner as it repeatedly failed to return phone calls and respond to emails.  Despite Zurich's cavalier handling of plaintiff's claim, the history of dilatory action at issue here occurred before the filing of suit and before defendant, presumably, had any involvement in the claim.  Indeed, there is no suggestion that counsel for plaintiff communicated with Discount Box, itself, as opposed to its insurer, Zurich.  There is no suggestion on this record that defendant knew about or condoned the foot dragging by its insurer, Zurich.  Therefore, the absence of any history of dilatory action by Discount Box weighs in favor of setting aside default.

### 4.  Prejudice to Plaintiff

The court must next determine whether plaintiff has been prejudiced by the delay occasioned by the default.  "To determine if the non-defaulting party was prejudiced, courts examine whether the delay [caused by the default]:  (1) made it impossible for the non-defaulting

party to present some of its evidence; (2) made it more difficult for the non-defaulting party to proceed with trial; (3) hampered the non-defaulting party's ability to complete discovery; and (4) was used by the defaulting party to collude or commit a fraud." Burton v. The TJX Cos., Inc., No. 3:07–CV–760, 2008 WL 1944033, at *4 (E.D.Va. May 1, 2008) (internal citations omitted). The ability of a non-moving party to present evidence and the ability to proceed to trial are significant factors in assessing prejudice. Id. Moreover, mere inconvenience is insufficient to constitute prejudice to the non-moving party, and, having a case heard on the merits, which is the primary consequence of setting aside an entry of default, is not prejudicial. Id.

Plaintiff has not identified any prejudice from the default. There has been no suggestion that plaintiff's access to evidence necessary for trial or ability to conduct discovery has been hindered by the delay. Nor has there been any indication that the defendant's delay is suggestive of fraud or obstruction. A twenty-five day delay in responding to the complaint is not sufficiently long for the court to conclude that plaintiff was prejudiced as a matter of law. The absence of prejudice weighs strongly in favor of setting aside the entry of default.

### 5. Availability of Alternative Sanctions

Finally, "[a] district court should consider whether there are any sanctions less dramatic than a default that are both available and effective." Mahmoodian v. Pirnia, 2012 WL 1997789, at *5 (W.D. Va. June 4, 2012) (citing Vick, 263 F.R.D. at 331). Alternative sanctions less drastic than entry of default could be imposed to cure defendant Discount Box's failure to timely respond to the complaint. In its pleadings, defendant Discount Box has suggested that, as a less severe alternative sanction, it would admit the existence of an agency relationship between it and the driver, Smith. In addition to this evidentiary sanction, the court believes that the awarding of costs incurred by plaintiff in seeking default judgment also is warranted. Courts may impose

14

monetary sanctions as a common alternative to default.  See Flora, No. 4:08cv31, 2009 WL 1956495, at *5 (W.D.Va. July 7, 2009) (imposing the sanction of costs, attorney's fees, and a prohibition that the party not assert the statute of limitations as a defense).  Plaintiff filed a motion for default on October 24, 2012, prepared for and attended an evidentiary hearing on damages on November 6, 2012, submitted an extensive affidavit detailing Zurich's inattention to the claim, and has filed briefs in opposition to defendant's motion for leave to file a responsive pleading and motion to set aside default.  In addition to the evidentiary sanction on the issue of agency, it is appropriate, as a further sanction, to award plaintiff her costs and fees incurred in pursuing the default.  Plaintiff, therefore, shall be permitted to file a petition for attorney's fees and costs associated with her efforts to obtain a default judgment as a sanction for defendant's delay in this case.[9]  The availability of alternative sanctions weighs in favor of setting aside default.

### III.

The Fourth Circuit has counseled trial courts to grant default judgments "sparingly." Lolatchy, 816 F .2d at 953.  Indeed, the court is required to construe all of the "good cause" factors liberally and to avoid the extreme sanction of default.  While all of the "good cause" factors certainly do not weigh in defendant Discount Box's favor, many factors do.  Given that defendant Discount Box entered an appearance in this court only twenty-five days after the time to respond to the complaint had expired, the absence of any identifiable prejudice to plaintiff and the Fourth Circuit's recognition of the "time-worn commitment to the resolution of disputes on their merits," the court finds that "good cause" exists to vacate the entry of default under Rule 55(c).  Colleton Prep., 616 F.3d at 420.  Thus, the court finds that the Clerk's entry of default

---

[9] The petition should include a detailed accounting of the fees and expenses incurred in litigating defendant's default.

15

should be set aside and defendant Discount Box be permitted to file a responsive pleading within fourteen (14) days of the entry of the Order accompanying this opinion.  It follows that Plaintiff's motion for default judgment will be denied.  Because default is set aside, the court also denies as moot plaintiff's motion to voluntarily dismiss defendant Smith, as this motion is premised on the entry of default against defendant Discount Box.  This case will be allowed to proceed on the merits.  An appropriate order will be entered this day.

The clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered:  February 22, 2013

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge